J. L. MUNN v. SCHOOL TOWNSHIP OF SOAP CREEK *et al.,*
Apellants.

**School Districts:** ESTABLISHMENT: *Petitions.* Under Code, section 2794, providing that the school board shall establish an independent school district, on application of ten or more voters of cities, towns or villages having over one hundred residents, embracing, also, such contiguous territory petitioned for by a majority of the electors residing in such territory as may best subserve the convenience of the people for school purposes, it is not necessary for the board, in establishing the boundaries of the new district, to embrace all the contiguous territory for which the petitions are presented.

DESIRABILITY: *Powers of board.* Under Code, section 2794, providing that the school board shall establish the boundaries of an independent school district on written application of any ten voters of cities, towns, or villages having over one hundred residents, when such application is made, it is the duty of the board to fix the boundaries after determining that the locality has over

one hundred residents, and that the petition is signed by the requisite number of voters, as the desirability or necessity of the independent district is for the people to determine, not the board.

**Appeal:**   REFUSAL OF SEVERAL PETITIONS TO ESTABLISH DISTRICT: *Appeal of one for all.*   Code, section 2794, provides for the formation of an independent school district by the school board on written petition of ten or more voters of a city, town, or village having over one hundred residents, and including within such district contiguous territory, on application of the majority of the electors residing therein.   A petition was presented by voters of a village asking for the formation of such a district and other petitions were presented by a majority of the parties residing in contiguous territory asking to be embraced within the proposed district.   *Held,* that as all the petitions referred to the formation of the same district the action of the board rejecting the petition of the village applied to them all, from which an appeal for the benefit of all would lie on the part of the village.

TRIAL DE NOVO.   Where the proceedings are taken under Code, section 2794, authorizing the establishment of an independent school district, on proper application to the school board, and an appeal is taken to the county and state superintendent of public instruction from the action of the school board, the superintendents have jurisdiction *de novo* by the appeal and can enter any order the board could have made in the matter.

ACTION OF SUPERINTENDENT FINAL.   Where appeals are allowed to the county and the state superintendents of public instruction from the action of a school board in refusing to fix the boundaries of an independent school district, an order of the superintendent, on appeal, fixing such boundaries is final.

FAILURE OF BOARD TO TAKE TIMELY ACTION.   Code, section 2794, provides for the formation of an independent school district by the school board on application by a requisite number of voters. Section 2796 provides that the organization of such independent school district shall be effected on or before the first day of August, of the year in which it is attempted   Application was made for such a district in March, 1898, and the board refusing the application, appeal was taken which was not decided until October, 1898.   *Held,* that the failure of the school board to act on the appeal, necessitating an appeal beyond August, did not prevent the formation of the district, as section 2796 was directory merely.

*Appeal from Davis District Court.*— HON. T. M. FEE
Judge.

WEDNESDAY, APRIL 11, 1900.

ACTION to compel defendants, as school directors, to order an election to determine whether an independent district shall be organized. Order issued as prayed, and defendants appeal.—*Affirmed.*

*Payne & Sowers* for appellants.

*Rominger & Rominger* for appellee.

LADD, J.—The plaintiff and sixteen other residents of the village of Belknap petitioned the board of school directors of Soap Creek township, in which it was situated, "to set us off as an independent school district." Shaffer and twenty-one others, in a petition filed on the same day, asked that sections 35 and 36, each of which included a part of the village plat, also sections 25, 26, and the east ¾ of section 34, be attached thereto. Blankenship and five others, on April 15, 1898, prayed that the southeast ¼ southeast ¼ of section 22, all of section 27 except the northwest ¼ northwest ¼, and the west ¼ of section 34, also be attached. The board of directors on the following day, by a vote of six to two, refused to "grant Belknap's petition for an independent district." Munn appealed to the county superintendent, by whom the action of the board was reversed, and an election ordered to determine whether an independent district, composed of Belknap only, be established. On appeal taken to the state superintendent of public instruction, the decision was so modified as to require an election also in the territory described in the Shaffer and Blankenship petitions. The directors declined to follow the decision of the state superintendent, and this action was brought to compel them to do so.

I. There is no merit in the contention that the board, in denying Belknap's petition, acted only on that presented by Munn and the sixteen villagers. Under the statute, the written petition of any ten voters of the village is essential. Without it, nothing may be done. Eliminate it, and the scheme of organizing an inde-

pendent district is gone. This is apparent from the language of section 2794 of the Code: "Upon the written petition of any ten voters of a city, town or village of over one hundred residents to the board of the school township in which the portion of the town plat having the largest number of voters is situated, such board shall establish the boundaries of a proposed independent district, including therein all of the city, town or village, and also such contiguous territory as is authorized by a written petition of a majority of the resident electors of the contiguous territory proposed to be included in said district, in not smaller subdivisions than entire forties of land, in the same or any adjoining school townships, as may best subserve the convenience of the people for school purposes, and shall give the same notices of a meeting, as required in other cases, at which meeting all voters upon the territory included within the contemplated independent district shall be allowed to vote by ballot for or against such separate organization. When it is proposed to include territory outside the town, city or village, the voters residing upon such outside territory shall be entitled to vote separately upon the proposition for the formation of such new district, by presenting a petition of at least twenty-five per cent. of the voters residing upon such outside territory, and if a majority of the votes so cast is against including such outside territory, then the proposed independent district shall not be formed."

Besides, the record indicates the purpose of the directors to reject the entire proposition to set apart a separate district. All the petitions referred to its formation, and one might be designated "Belknap's Petition" quite as appropriately as another. Had no petitions save that of the villagers been presented, then the board must have submitted to the electors residing on the plat the propriety of organizing such a district. But the voters living on territory contiguous are given the right to have it included within the boundaries to be fixed if a majority so request,

and if it "best subserve the convenience of the people for school purposes." The Munn petition did not attempt to fix the boundaries of the proposed district, and it needs no argument to show that the villagers were interested in having the outside territory included. The extent of the district necessarily had a direct bearing on the tax levy as well as on the character of the school to be established. The purpose of the Shaffer and Blankenship petitions was to enable the directors to include the territory represented within the boundaries of the district. By expressly empowering the board to take in territory "authorized by a written petition of a majority of the resident electors" thereof, the inference is inevitable that lands for which no such petition is obtained must be excluded. School officers have only such powers as are conferred by statute, and when the conditions under which these are to be exercised are clearly defined, as in this case, they cannot be ignored. See Sutherland Statutory Construction section 454. Otherwise, the language requiring a petition by the majority of the resident electors must be treated as meaningless, and this would be contrary to all the canons of construction. The proposed district, however, need not necessarily contain all lands for which such petitions are presented. In fixing the boundaries, the board is only to include "such contiguous territory * * * as may best subserve the convenience of the people for school purposes." But the defendants denied all right to an election, and arbitrarily declined to perform the duty imposed by the statute, of defining the boundaries. For the reasons suggested, Munn was interested in having the territory outside the village plat in the district, and the state superintendent acquired jurisdiction by his appeal. Appellants are concerned lest those living beyond the limits of the plat might, in some instances, defeat the organization. This is guarded against by the requirement that a majority of the resident voters must first petition that they be included, and it is hardly to be supposed that they

will vote otherwise than they pray.   Moreover, it is much
easier to imagine possible contingencies than to provide
against them in legislation.   If provision is made for those
which are probable, it is always a matter for felicitation.

II.   The desirablility or necessity for an independent
district is for the people to determine, not the board of direct-
ors.   It is incumbent on that body to say whether the village
contains one hundred residents and the requisite
number of electors have signed the respective peti-
tions, and, having so found, no option is left save to
fix the boundaries of the proposed district and order the
election.   The hearing before the superintendent was de novo,
and such an order might be entered as ought to have been by
the board.   *Atkinson v. Hutchinson,* 68 Iowa, 161;
*Carpenter v. Independent Dist. No. 5,* 95 Iowa, 300.   As no
evidence concerning the condition of the surrounding coun-
try was introduced, the superintendent had the right to
assume that no obstacle existed which would obstruct pupils in
attending the school to be located.   His order, then, fixing
the boundaries, must be regarded as final.

III.   Section 2796 of the Code provides that "the
organization of such independent district shall be effected
on or before the first day of August of the year in which it is
attempted."   It is insisted that, as this was not accom-
plished in 1898, it is too late; in other words, that
these directors may ignore their plain duty, and, by
placing obstructions in the way, render the statute relating
to the organization of independent districts inoperative.
This statute relates to perfecting the organization already
determined upon by the elected officers, and is directory only.
"Directions which are not of the essence of the thing to be
done, but which are given with a view merely to the proper
orderly, and prompt conduct of the business, and by the
failure to obey which the rights of those interested will not
be prejudiced, are not commonly to be regarded as manda-

tory; and if the act is performed, but not in the time or in the precise mode indicated, it will be sufficient if that which is done accomplishes the substantial purposes of the statute." *Neal v. Burrows,* 34 Ark. 491; Sutherland Statutory Construction section 447; *Hubbel v. Polk County,* 106 Iowa, 618.

We discover no error in the record and the writ will be issued as prayed, commanding the directors of Soap Creek township to call an election of the electors of the territory set apart by the state superintendent within ten days from the service of notice requiring them so to do.—AFFIRMED.